UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

DIANA ABALOLA,                                          :
                                                        :
                                      Plaintiff,        :
                                                        :
                    -v-                                 :
                                                        :
ST. LUKE'S-ROOSEVELT HOSPITAL CENTER, :
doing business as Mt. Sinai-Morningside Hospital,       :
MOUNT SINAI HEALTH SYSTEM,                              :
STEPHANIE GUARENO, individually, and ANN :
MCNICHOLAS, individually,                               :
                                                        :
                                      Defendants.       :
-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/30/2022

1:20-cv-6199-GHW

<u>MEMORANDUM OPINION
AND ORDER</u>

GREGORY H. WOODS, United States District Judge:

Plaintiff Diana Abalola brought this employment discrimination action against Defendants

Mount Sinai Health System ("MSHS"), St. Luke's-Roosevelt Hospital Center, Stephanie Guareno,

and Ann McNicholas, alleging that Defendants discriminated against her and subjected her to a

hostile work environment.  In particular, Abalola alleges that Guareno, her supervisor, made a

number of discriminatory comments about her race and age.  In addition, Abalola alleges that

Defendants retaliated against her after she filed a complaint with the New York State Division of

Human Rights (the "NYSDHR") complaining of the discrimination.  Abalola brings this action

under 42 U.S.C. § 1981, the New York State Human Rights Law (the "NYSHRL"), and the New

York City Human Rights Law (the "NYCHRL").  Defendants have moved for summary judgment

on each of Abalola's claims.  For the reasons discussed below, Defendants' motion for summary

judgment is GRANTED.

## I.    BACKGROUND

### A.  Factual Background[1]

#### 1.    Abalola's Employment at Mt. Sinai-Morningside Hospital

Defendant Mount Sinai Health System is an integrated health care system that owns and operates Defendant St. Luke's-Roosevelt Hospital Center, which does business as Mt. Sinai-Morningside Hospital ("MSM").  *See* Complaint, Dkt. No. 1, ¶¶ 7–8.  Plaintiff Diana Abalola is an African American woman and was born in 1966.  *See* Compl. ¶ 6; Pl.'s Rule 56.1 Resps. ("Pl.'s 56.1 Stmt."), Dkt. No. 35, ¶ 85.

Abalola works at MSM as a staff nurse on 10 East, a cardiac telemetry unit.  Pl.'s 56.1 Stmt. ¶¶ 1, 14.  Abalola first began working at 10 East in 2012.  *Id.* ¶ 1.  Later that year, Abalola transferred to a staff nurse position on a psychiatry unit.  *Id.* ¶ 8.  In April 2013, Abalola was displaced from her position on the psychiatry unit and was placed into a staff nurse position in the Comprehensive Psychiatric Emergency Program.  *Id.* ¶ 9.  Abalola was terminated from that position on July 2, 2013. *Id.* ¶ 10.  Abalola's union, the New York State Nurses Association, grieved Abalola's termination and she was reinstated to her position on 10 East pursuant to a return-to-work agreement in September 2013.  *Id.* ¶¶ 11–12.  In March 2016, Defendant Stephanie Guareno became 10 East's Nurse Manager.  *Id.* ¶ 15.  As Nurse Manager, Guareno was Abalola's supervisor.  *Id.*  Guareno, a Dominican, identifies as a Black Latina.  *See* Defs.' Rule 56.1 Response, Dkt. No. 39, ¶ 138.

Throughout her time at 10 East, Abalola has been disciplined on multiple occasions for absenteeism and arriving late.  On June 2, 2016, Guareno had a discussion with Abalola regarding Abalola's unscheduled absences and tardiness.  Pl.'s 56.1 Stmt. ¶ 27.  Abalola contends that this discussion resulted in a formal memo to her file documenting her lateness, which she asserts is a

---

[1] The following facts are drawn from the parties' Local Civil Rule 56.1 Statements and other submissions in connection with these motions and are undisputed or taken in the light most favorable to Plaintiff, unless otherwise noted.

document that is considered in evaluating an employee's request to be transferred. *Id.* ¶¶ 27–28.  On August 18, 2017, Abalola was issued a First Warning for having four unscheduled absences in a six-month period. *Id.* ¶ 29.  On December 8, 2017, Abalola was issued a Second Warning for arriving an hour and fifteen minutes late to work on a prior day. *Id.* ¶ 54.  Abalola has not been disciplined since receiving the Second Warning.  *See id.* ¶ 55.

### 2.    Abalola's Transfer Requests

Starting in January 2016, Abalola began applying to transfer to a number of positions at different MSHS hospitals. *Id.* ¶ 19.  In August 2016, Abalola was offered a position in the infusion unit at Mount Sinai West, but she turned down that position. *Id.* ¶ 20.  Abalola has not been offered any other transfer position. *Id.* ¶ 21.  Eleven of the positions for which Abalola applied were cancelled and were not offered to any applicant. *Id.* ¶ 127.  Abalola applied to forty-six other positions that were not cancelled. *Id.* ¶ 126.

For each position, a hiring manager conducts applicant interviews and ultimately recommends a person to be hired. *Id.* ¶¶ 25, 122, 124.  The hiring manager can review the applicant's past performance, including past terminations. *Id.* ¶ 23; *see also id.* ¶ 28.  Thirty-three hiring managers were involved in the hiring decisions for the positions for which Abalola applied. *Id.* ¶ 124–25.  Abalola believes that she was denied the transfers due to discrimination because Guareno told her that if she wanted to transfer, she needed to do something with her hair. *Id.* ¶ 133.  However, Guareno's sole role in the transfer process is to tell Human Resources or the hiring manager, if they ask, whether there is any record of discipline in an applicant's file. *Id.* ¶ 136.  No facts have been presented to the Court that support the inference that Guareno took any other action in the transfer process for any position.

In addition, Abalola asserts that, during an interview for a transfer position, the hiring manager, Mary Joy Adverderada, asked her about her last name, asked where she and her ex-

husband were born, and expressed surprise that she was not Filipina.  *Id.* ¶ 48.  The person who was later hired for that position is Black, was over 40 years old at the time of the hire, and had over 10 years of relevant experience.  *Id.* ¶ 129–30.  Adverderada was the hiring manager for a second position for which Abalola applied.  *Id.* ¶ 131.  The person hired for that position is white.  *Id.* ¶ 132.

### 3.    Abalola Reports Discriminatory Conduct

Abalola alleges that Guareno has repeatedly subjected her to discriminatory comments and conduct based on her age and race.  Specifically, Abalola alleges that on multiple occasions Guareno called Abalola "sassy" and "rude," and told her that she had an "attitude," did not smile enough, lacked self-awareness, and should improve her body language.  *Id.* ¶ 60.  Abalola has not identified when Guareno made these comments and Guareno denies making the comments except that she coached Abalola to have open body language and to smile while working with patients.  *Id.* ¶¶ 61–64.

Abalola states that in October 2017, Guareno commented that the hospital needed to start treating privately paying patients as VIPs, instead of remaining a "small community hospital in Harlem."  *Id.*  Although Guareno did not specifically reference the race of the patients, Abalola understood the comment to be discriminatory because the hospital had a lot of Black and Hispanic patients, but the majority of the privately paying patients were white.  *Id.* ¶ 63; Deposition of Diana Abalola, Dkt. No. 25-1, at 74–75.

In addition, Abalola asserts that Guareno told her that:  (1) if Abalola wanted to transfer, she needed to do something with her hair; (2) her hair looks like Buckwheat from *The Little Rascals*; (3) her hair looked better after being straightened; (4) as a Black woman, people will view her as uncooperative; and (5) she did not want to come across as an angry black woman.  Pl.'s 56.1 Stmt. ¶ 65.  Abalola also says that Guareno teased her about needing bifocals, and chastised her for moving slowly on multiple occasions.  *Id.* ¶ 86.

On September 5, 2017, Abalola complained to the Corporate Compliance Hotline that Guareno: (1) snatched a paper out of her hand; (2) would not let her precept new staff; (3) told her that her hair did not look right and that she needed bifocals; (4) made her apologize to a Nursing Assistant; and (5) had not approved her requests for days off. *Id.* ¶ 30. Defendant Ann McNicholas, then a Senior Manager of Labor Relations, investigated Abalola's complaint. *Id.* ¶ 31. During the investigation, McNicholas spoke with Abalola and Guareno, and ultimately concluded that she was unable to substantiate Abalola's complaint. *Id.* ¶¶ 32–36.

In September 2017, after receiving multiple complaints from Abalola's co-workers regarding her job performance, Guareno placed Abalola on a non-disciplinary Performance Improvement Plan (the "PIP"). *See id.* ¶¶ 37–41. On September 26, 2017, Abalola made another complaint concerning Guareno to McNicholas. *Id.* ¶ 42. Abalola repeated many of her previous complaints, and also complained that: (1) Guareno bullied her into moving furniture and issued her the PIP for refusing to move furniture; and (2) she was denied one extra weekend off a month while Guareno allowed another nurse to have every weekend off. *Id.* ¶¶ 43–44. McNicholas told Abalola that the PIP was not disciplinary and that she had been unable to substantiate her earlier complaint. *Id.* ¶ 45. Abalola also complained about Adverderada's comments regarding her ethnicity during her interview. *Id.* ¶ 48. McNicholas looked into these complaints by speaking with Guareno and Adverderada. *Id.* ¶¶ 49–51.

On February 22, 2020, Abalola alleges that a doctor falsely accused her of neglecting or mis-caring for a patient and berated her in front of multiple other staff members. *Id.* ¶ 146. Several minutes later, the doctor attempted to continue questioning Abalola about the patient, but he mistook a different employee for Abalola. *Id.* ¶ 147. Abalola later heard the doctor tell his colleagues that "that's how you handle a nurse," while pointing at Abalola. *Id.* ¶ 149. Abalola was humiliated by this incident. *Id.* ¶ 150.

In addition to the conduct endured by Abalola, Abalola alleges that Chelsea Stanley, a Black woman who is a nurse on 10 East, told Abalola that Guareno made similar comments to Stanley about her movement and attitude.  *Id.* ¶ 69.  Stanley has submitted evidence of various interactions in which she alleges Guareno made racist comments and treated her and other Black nurses less well than other nurses.  *See id.* ¶¶ 155–67.

### 4.    Abalola Files a NYSDHR Complaint

On October 24, 2017, Abalola filed an Employment Complaint Form with the New York State Division of Human Rights, alleging that Guareno discriminated against her on the basis of her age, national origin, and race.  *Id.* ¶¶ 52, 139; Declaration of Diana Abalola ("Abalola Decl."), Dkt. No. 33, Ex. B.  Abalola submitted a verified complaint to the NYSDHR on January 8, 2018.  *See* Final Investigation Report and Basis of Determination, Dkt. No. 33, Ex. D.  MSM learned of Abalola's NYSDHR complaint on January 12, 2018.  Pl.'s 56.1 Stmt. ¶ 53.  On July 16, 2018, the NYSDHR issued a Final Investigation Report and Notice of Determination, which found probable cause to support the allegations in Abalola's complaint.  Pl.'s 56.1 Stmt. ¶ 141.  On October 15, 2018, the NYSDHR scheduled a pre-hearing settlement conference for October 13, 2018.  *Id.* ¶ 142.  The parties were unable to resolve their dispute during the settlement conference.  *Id.*  On January 8, 2020, the NYSDHR scheduled a public hearing in Abalola's case for February 3 and 4, 2020.  *Id.* ¶ 143.  Shortly after receiving notice of the hearing, Abalola requested that the hearing be rescheduled because she was on bed rest recovering from laryngitis and because she had a work conflict.  *Id.* ¶ 144; Abalola Decl. ¶ 9.  Abalola decided to withdraw her NYSDHR complaint before the hearing was held.  Pl.'s 56.1 Stmt. ¶ 144; Abalola Decl. ¶ 9.  Abalola contends that Guareno retaliated against her because of the NYSDHR complaint by:  (1) giving Abalola less challenging patients; (2) continuing to make comments about Abalola being sassy and slow; and (3) telling Abalola that she was not a team player on her 2018 Performance Appraisal.  Pl.'s 56.1 Stmt. ¶ 113.

### B. Procedural History

Abalola initiated this action on August 6, 2022.  Dkt. No. 1.  Abalola's complaint asserts

eight causes of action:  (1) discrimination under 42 U.S.C. § 1981; (2) discrimination under the

NYSHRL; (3) aiding, abetting, inciting, compelling, or coercing discriminatory conduct under the

NYSHRL; (4) retaliation under the NYSHRL; (5) discrimination under the NYCHRL; (6) retaliation

under the NYCHRL; (7) aiding and abetting discriminatory conduct under the NYCHRL; and

(8) supervisor liability under the NYCHRL.

On May 17, 2021, Defendants filed a motion for summary judgment on all of Abalola's

claims.  Dkt. No. 24.  Defendants also filed a brief in support of that motion, Dkt. No. 31; a Local

Rule 56.1 statement of undisputed facts, Dkt. No. 30; and a number of declarations and exhibits

referenced in the brief and statement of undisputed facts, Dkt. Nos. 25–29.

On June 14, 2021, Abalola filed a brief in opposition to Defendants' motion for summary

judgment, Dkt. No. 32 ("Opp'n"); a number of declarations and exhibits, Dkt. Nos. 33–34; and a

counterstatement pursuant to Local Rule 56.1, Dkt. No. 35.  On June 18, 2021, Defendants filed a

brief in reply to Abalola's brief in opposition, Dkt. No. 40, a number of additional declarations and

exhibits, Dkt. Nos. 36–38, and a response to Plaintiff's 56.1 counterstatement, Dkt. No. 39.

## II.   LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))).  A

genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586 (citations omitted), and she "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted); *see also Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."). "Assessments of credibility and choices between conflicting versions of

the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted).

In employment discrimination cases, where direct evidence of intentional discrimination is rare, "affidavits and depositions must be carefully scrutinized for circumstantial proof" of discrimination. *Turner v. NYU Hosps. Ctr.*, 784 F. Supp. 2d 266, 275 (S.D.N.Y. 2011) (citing *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1994)), *aff'd*, 470 F. App'x 20 (2d Cir. 2012). "However, even in such cases, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment and show more than some metaphysical doubt as to material facts." *Id.* at 275–76 (internal quotation marks omitted) (first quoting *Schwapp v. Town of Avon*, 118 F. 3d 106, 110 (2d Cir. 1997); and then quoting *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010)); *Brown v. Johnson & Johnson Consumer Products, Inc.*, 92-cv-7886, 1994 WL 361444, at *3 n.3 (S.D.N.Y. July 11, 1994) ("To assert that [defendant's] witnesses may be lying, without any evidence to contradict the witnesses' testimony cannot defeat a motion for summary judgment." (citation omitted)).

**B.  42 U.S.C. § 1981**

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). "Subsection (c) explicitly applies Section 1981 to private discrimination . . . ." *Ofori-Tenkorang v. Am. Int'l Grp., Inc.*, 460 F.3d 296, 301 (2d Cir. 2006). "Section 1981 does not prohibit discrimination on the basis of . . . national origin, . . . or age . . . ." *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) (citations omitted).

"[I]ndividuals may be held liable under § 1981." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000). "[I]n order to make out a claim for individual liability under § 1981, a plaintiff must demonstrate 'some affirmative link to causally connect the actor with the discriminatory action.'" *Id.* (quoting *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir. 1991)). "A claim seeking personal liability under section 1981 must be predicated on the actor's personal involvement." *Id.* (quoting *Allen*, 928 F.2d at 983).

## III.   DISCUSSION

### A.  Section 1981 Discrimination Claims

#### 1.  Legal Standard

To establish her § 1981 discrimination claim, Abalola must show: "(1) that she is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in § 1981." *Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 261 (2d Cir. 2000). Further, "a plaintiff must . . . prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

Section 1981 discrimination claims "are governed at the summary judgment stage by the burden-shifting analysis" established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) ("We analyze [Plaintiff's] Title VII, § 1981, and NYHR discrimination claims under the familiar burden-shifting framework set forth in *McDonnell Douglas* . . . ."); *see also Broich v. Inc. Vill. of Southampton*, 462 F. App'x 39, 42 (2d Cir. 2012) ("A plaintiff's efforts to establish the second element of a § 1981 claim are subject to the same burden-shifting analysis as intentional discrimination claims brought under Title VII of the Civil Rights Act of 1964 . . . .").

Under the *McDonnell Douglas* framework, Abalola "bears the initial burden of establishing a prima facie case of discrimination." *Holcomb*, 521 F.3d at 138. To establish a prima facie case, Abalola "must show: (1) [s]he belonged to a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown*, 673 F.3d at 150 (quoting *Holcomb*, 521 F.3d at 138). "A plaintiff's burden of establishing a *prima facie* case is *de minimis*." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001).

"Establishment of a *prima facie* case 'in effect creates a presumption that the employer unlawfully discriminated against the employee.'" *Adeniji v. Admin. for Children Servs.*, 43 F. Supp. 2d 407, 419 (S.D.N.Y. 1999) (quoting *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1335 (2d Cir. 1997)), *aff'd*, F.3d 430 (2d Cir. 1999). If the plaintiff meets that initial burden, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action. *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014). If the employer offers such a reason, the presumption of discrimination raised by the *prima facie* case is rebutted, and the burden returns to the plaintiff to point to evidence from which a reasonable jury could conclude that the employer's stated reasons are merely a pretext for unlawful discrimination. *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

### 2. Application

Abalola has failed to establish a *prima facie* case of race discrimination under § 1981. As to the first two elements, there is no dispute that Abalola is a member of a protected class and that she was qualified to be a staff nurse, a position that she has held for over ten years. However, as explained below, Abalola has not established that she suffered an adverse employment action that

occurred under circumstances giving rise to an inference of discriminatory intent.

An adverse employment action is "a materially adverse change in the terms and conditions of employment such as termination, demotion evidenced by a decrease in salary or wage, being given a less distinguished title, a material loss in benefits, significantly diminished material responsibilities, or some other action deleterious to the plaintiff's current or future employment." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 43 (2d Cir. 2019) (internal quotation marks, citation, and emphasis omitted). The action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting *Terry*, 336 F.3d at 138).

Abalola does not clarify which actions Defendants subjected her to that she asserts as the basis of her discrimination claim. In fact, Abalola appears to rely solely on the denial of her transfer requests as the adverse employment action for purposes of her discrimination claims. *See* Opp'n at 12–13. Nevertheless, Abalola has adduced evidence of a number of actions that she appears to believe are adverse. The Court will address each in turn.

First, the written warnings and reprimands that Abalola received for unscheduled absences and arriving late to work do not constitute adverse employment actions. *See, e.g.*, *Aiello v. Stamford Hosp.*, No. 3:09-CV-1161, 2011 WL 3439459, at *13 (D. Conn. Aug. 8, 2011) ("Courts in the Second Circuit have held that 'an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies.'" (quoting *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006))); *Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 306 (N.D.N.Y. 2013) ("Verbal and written warnings generally do not constitute adverse employment actions unless they lead to more substantial employment actions that are adverse.").

In addition, the investigations into Abalola's job performance, which did not result in formal discipline, do not constitute adverse employment actions. *See Davis v. Goodwill Indus. of Greater N.Y.*

*& N.J., Inc.*, No. 15-CV-7710, 2017 WL 1194686, at *7 (S.D.N.Y. Mar. 30, 2017) ("Although a reprimand can constitute an adverse employment action, 'courts in this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation.'" (quoting *Honey v. County of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002))).  Similarly, the PIP, which Abalola admits was non-disciplinary, does not constitute an adverse employment action.  *McGrath v. Thomson Reuters*, No. 10-CV-4944, 2012 WL 2119112, at *11 (S.D.N.Y. Apr. 30, 2012) ("The issuance of a performance improvement plan to an employee is simply not an adverse employment action."), *report and recommendation adopted*, No. 10-CV-4944, 2012 WL 2122325 (S.D.N.Y. June 12, 2012), *aff'd*, 537 F. App'x 1 (2d Cir. 2013); *see also Brown v. Am. Golf Corp.*, 99 F. App'x 341, 343 (2d Cir. 2004) (summary order) (holding that the plaintiff being placed on a performance improvement plan did not constitute an adverse employment action).  In the same vein, Abalola's 2018 Performance Appraisal, in which she received an overall positive rating, does not constitute an adverse employment action.  *See Siddiqi v. N.Y.C. Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 367 (S.D.N.Y. 2008) ("[N]egative evaluations, standing alone without any accompanying adverse results, are not cognizable." (quoting *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 247 (S.D.N.Y. 2001))).

Abalola's claims that Guareno and a doctor harassed and demeaned her do not constitute adverse employment actions.  *See, e.g., Culmone-Simeti v. N.Y.C. Dep't of Educ.*, No. 17-CV-2313, 2018 WL 3384437, at *7 (S.D.N.Y. July 11, 2018) (holding that harassment and disrespectful behavior does not constitute an adverse employment action).  Similarly, the denial of Abalola's requests for days off does not constitute an adverse employment action.  *See, e.g., Wharton v. County of Nassau*, No. 10-CV-0265, 2013 WL 4851713, at *9 (E.D.N.Y. Sept. 10, 2013) ("Denials of vacation time are not adverse actions." (collecting cases)).  Nor is the fact that Abalola did not receive employee of the

month.  *See Malloy v. Pompeo*, No. 18-CV-4756, 2020 WL 5603793, at *16 (S.D.N.Y. Sept. 18, 2020)

("The failure to give an employee an award . . . does not constitute an adverse employment action."

(collecting cases)).

Abalola's allegations that Guareno would not let her precept new staff and that Guareno

assigned her less challenging patients do not constitute adverse employment actions because there is

no evidence that the assignments had a materially adverse impact on her job.  *See, e.g.*, *Rodriguez v.*

*Coca Cola Refreshments USA, Inc.*, No. 12-CV-234, 2013 WL 5230037, at *3 (E.D.N.Y. Sept. 16, 2013)

("[A]ssignments that are part of an employee's normal responsibilities are not 'adverse employment

actions' where, as here, the rate of pay and benefits remains the same." (collecting cases)); *Potash v.*

*Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013) ("Changes in assignments or

responsibilities that do not 'radical[ly] change' the nature of work are not typically adverse

employment actions.").  Although Abalola contends that her assignments limited her ability to gain

useful experience, *see* Compl. ¶ 50, she has not adduced any evidence to establish that the

assignments caused her to lose any career advancement opportunities.  *See Trachtenberg v. Dep't of*

*Educ. of N.Y.C.*, 937 F. Supp. 2d 460, 468 (S.D.N.Y. 2013) ("The denial of professional training

opportunities may constitute an adverse employment action, but only where an employee can show

'material harm' from the denial, 'such as a failure to promote or a loss of career advancement

opportunities.'" (quoting *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 351–52 (S.D.N.Y. 2006))).

As stated, Abalola does not argue that any of these actions constitute adverse employment

actions.  *See* Opp'n at 12–13.  Instead, Abalola argues that she suffered an adverse employment

action by being denied her job transfer requests.  *Id.*  "A denial of a transfer may . . . constitute an

adverse employment action," but the plaintiff is required "to proffer objective indicia of material

disadvantage; 'subjective, personal disappointment[ ]' is not enough."  *Beyer v. County of Nassau*, 524

F.3d 160, 164 (2d Cir. 2008) (final alteration in original) (quoting *Williams v. R.H. Donnelley, Corp.*, 368

F.3d 123, 128 (2d Cir. 2004)). To establish "the 'adverse employment action' necessary to make out a *prima facie* case" a plaintiff must "proffer[ ] evidence from which a reasonable trier of fact could conclude that the transfer sought and denied would have involved an objective and significant improvement in the terms, conditions, or privileges of her employment." *Id.* at 166. There must be "objective indicia that the transfer denial 'created a materially significant disadvantage' in the working conditions of the aggrieved employee." *Id.* at 164 (quoting *Williams*, 368 F.3d at 128). "If a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer . . . positively . . . does not of itself render the denial . . . of the transfer [an] adverse employment action." *Williams*, 368 F.3d at 128 (final alteration in original) (quoting *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532–33 n.6 (10th Cir. 1998)).

Throughout her tenure at 10 East, Abalola applied for over fifty transfer positions. Pl.'s 56.1 Stmt. ¶¶ 126–27. Abalola admits that all but three of the positions were lateral staff nurse positions. *Id.* ¶ 117. The Court will address the lateral and non-lateral positions in turn.

First, considering Abalola's applications to the lateral positions, Abalola has not produced any evidence that the lateral positions would have involved an objective and significant improvement over her current position. In fact, Abalola offers almost no information about the lateral positions that she applied to, such as the responsibilities, terms, or conditions of those positions. *See* Opp'n at 18–19. Instead, Abalola makes the conclusory allegation that "numerous transfers that [she] requested . . . would have helped her develop her knowledge and skills as a nurse, would have accelerated her career, and would have improved her future earning potential." *Id.* Abalola cannot rest on her conclusory allegations or subjective belief—to establish an adverse employment action, Abalola must proffer objective indicia that the denials created a materially significant disadvantage in her working conditions. *Beyer*, 524 F.3d at 164. Abalola has not done so here. *See Vasconcellos v. Mount Sinai Med. Ctr.*, No. 05-CV-10479, 2011 WL 1097415, at *17 (S.D.N.Y.

Feb. 16, 2011) ("Plaintiff has not established that [the] denial of these transfers constitutes adverse employment action because plaintiff has provided little to no information about these transfers to indicate whether they would entail significantly different requirements and responsibilities."), *report and recommendation adopted*, No. 05-CV-10479, 2011 WL 1046055 (S.D.N.Y. Mar. 22, 2011).

Similarly, Abalola makes the conclusory assertion that the transfers "would have removed her from her biased supervisor" and therefore would have improved her future employment opportunities. Opp'n at 18–19. Again, however, Abalola fails to support this contention with any evidence. *See id.* To support her position, Abalola quotes *Ortiz-Diaz v. U.S. Dep't of Hous. & Urb. Dev., Off. of Inspector Gen.*, 867 F.3d 70 (D.C. Cir. 2017), for the proposition that "discriminatory denial of a lateral transfer away from a biased supervisor can certainly be actionable under Title VII, given the adverse impact on the employee's potential for career advancement." *Id.* at 74. However, in *Ortiz-Diaz*, the plaintiff "proffered evidence that [his supervisor's] bias against minorities would have hindered his career advancement if he remained . . . and that a transfer to work under [a different supervisor's] supervision would have improved the likelihood that his career could advance based solely on merit." *Id.* at 75. The plaintiff specifically offered numerous "objective, non-conclusory statements of fact" supporting his belief that a transfer would have improved his career opportunities. *Id.* at 76. Further, the transfer requests were denied by the plaintiff's biased supervisor, rather than an independent decisionmaker, as here. *See id.* at 73.

Abalola offers no such evidence here. Thirty-three different hiring managers were involved in the employment decisions regarding Abalola's transfer requests. *See* Pl.'s 56.1 Stmt. ¶¶ 133–34. Guareno's only potential involvement in the transfer process is to tell Human Resources or the hiring manager whether there are any disciplinary actions in an employee's file, and only if Guareno is asked for that information. *Id.* ¶ 136. Abalola does not provide any evidence that Guareno was actually asked, or that Guareno actually provided, any information in connection with Abalola's

transfer requests.  Nor has Abalola identified objective indicia that her potential for career advancement would be significantly improved in another position.  Abalola's conclusory assertion that she would be more successful working for someone other than Guareno is insufficient.  *See Kalola v. Int'l Bus. Machs. Corp.*, No. 13-CV-7339, 2017 WL 3394115, at *10 (S.D.N.Y. Feb. 28, 2017) ("Plaintiff's subjective belief that he would have been more productive or successful under a different manager . . . is insufficient to carry his burden."), *report and recommendation adopted*, No. 13-CV-7339, 2017 WL 3381896 (S.D.N.Y. Aug. 4, 2017).

In sum, Abalola has not proffered objective indicia that the denials of her transfer requests to lateral positions created a materially significant disadvantage in her working conditions. Accordingly, Abalola has not established that the denials constitute adverse employment actions.  *See Clay v. County of Suffolk*, 404 F. Supp. 3d 737, 756 (E.D.N.Y. 2019) ("Plaintiff did not suffer any decrease in benefits, wages or salary; significant reduction in job responsibilities; loss of prestige, rank or opportunity for career advancement; or any other material change to the terms and conditions of her employment as a result of the denial of her transfer requests . . . and there is no evidence in the record from which a rational juror could reasonably conclude that any of the three . . . positions to which plaintiff sought reassignment, . . . 'would have involved objective and significant improvements in her conditions of employment.'" (quoting *Beyer*, 524 F.3d at 164)); *Morales v. Div. of Youth & Fam. Just.*, No. 14-CV-7253, 2019 WL 3430168, at *4 (S.D.N.Y. July 30, 2019) ("Because the denials of the plaintiff's transfer requests did not result in any diminution in earnings—and the plaintiff has not submitted evidence establishing that she suffered any other materially adverse change in her employment—the denials cannot constitute an adverse employment action.").

The denials of Abalola's applications to the three non-lateral positions, on the other hand, constitute adverse employment actions.  However, Abalola has not shown that the denials occurred

under circumstances giving rise to an inference of discrimination.  "An inference of discrimination can arise from circumstances including . . . 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group . . . .'"  *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).  The basis for Abalola's belief that she was denied the transfers due to her race is that Guareno told her that if she wanted to transfer, she needed to do something to her hair.  Pl.'s 56.1 Stmt. ¶ 133.  Yet, as discussed previously, there is no evidence that Guareno was personally involved in any of the employment decisions for Abalola's transfer requests.  Aside from Abalola's speculation, Abalola has not provided evidence that her transfer requests were denied based on her race.  There is no evidence that anyone involved in the hiring decisions for the three non-lateral positions made comments indicative of a discriminatory motive.[2]  Nor has Abalola produced evidence that she was treated differently than applicants of other races.  Because Abalola fails to establish a *prima facie* case, Defendants' motion for summary judgment on Abalola's § 1981 discrimination claims is granted.

**B.      Section 1981 Hostile Work Environment Claim**

**1.   Legal Standard**

"Section 1981 provides a cause of action for race-based employment discrimination based on a hostile work environment."  *Whidbee*, 223 F.3d at 69.  The same standards that apply to a hostile work environment claim under Title VII apply to Abalola's claim under § 1981.  *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 n.4 (2d Cir. 2014).  "In order to establish a

---

[2] Abalola alleges that a Mary Joe Adverderada, a hiring manager, asked about her ethnicity during an interview for a transfer position.  See Pl.'s 56.1 Stmt. ¶ 48.  However, although Adverderada was the hiring manager for two of the lateral positions that Abalola applied for, she was not the hiring manager for any of the three non-lateral positions.  *See id.* ¶ 118; Decl. of Gisely Diaz, Dkt. No. 26, Ex. 1 at 31, 51, 52.  And Abalola does not offer any evidence that Adverderada was otherwise involved in the hiring decision for the non-lateral positions.

hostile work environment claim under 42 U.S.C. § 1981, a plaintiff 'must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered.'" *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 723–24 (2d Cir. 2010) (quoting *Alfano v. Costello*, 294 F.3d 365, 373–74 (2d Cir. 2002)). "This standard has both objective and subjective components:  the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014).

"Relevant factors in determining whether the conduct is sufficiently pervasive 'include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)).  "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (quoting *Alfano*, 294 F.3d at 374) (internal quotation marks omitted).  "'[T]he plaintiff must show more than a few isolated incidents of racial enmity,' although a hostile work environment can also be established through evidence of a single incident of harassment that is 'extraordinarily severe.'" *Fincher*, 604 F.3d at 724 (citations omitted) (first quoting *Williams v. County of Westchester*, 171 F.3d 98, 100–01 (2d Cir. 1999) (per curiam); and then quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000), *superseded by regulation on other grounds as stated in Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019)).  "In short, a plaintiff alleging a hostile work environment 'must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the

conditions of her working environment.'" *Alfano*, 294 F.3d at 374 (internal quotation marks omitted) (quoting *Cruz*, 202 F.3d at 570).

### 2. Application

Abalola fails to establish a hostile work environment claim under § 1981.  Abalola asserts that Guareno engaged in the following harassing conduct:  (1) calling Abalola sassy and rude; (2) telling her that she has an attitude, does not smile enough, lacks self-awareness, and should improve her body language; (3) commenting that Mt. Sinai had to start treating privately paying patients as VIPs, instead of remaining a "small community hospital in Harlem"; (4) telling Abalola, on multiple occasions, that as a Black woman, people will see her as uncooperative, and that she should avoid coming across as an "angry Black woman"; (5) telling Abalola that if she wanted to transfer, she needed to do something about her hair; (6) saying that Abalola's hair reminded her of Buckwheat from *The Little Rascals*; (7) commenting that Abalola's hair looked better after it was straightened; (8) teasing Abalola about moving slow and needing bifocals; and (9) snatching a paper out of her hand.  In addition, Abalola asserts that Guareno denied her requests for leave, assigned her less challenging patients, would not let her precept new staff, and criticized her job performance in multiple ways, including placing her on the PIP.

The majority of the conduct that Abalola identifies is facially race-neutral.  However, "when the same individuals engage in some harassment that is explicitly discriminatory and some that is not, the entire course of conduct is relevant to a hostile work environment claim." *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 388 (2d Cir. 2020).  Therefore, the Court will consider all of Guareno's allegedly harassing conduct for purposes of Abalola's claim.  Nevertheless, no reasonable juror could conclude that Abalola was subjected to conduct that was sufficiently severe or pervasive, either in isolation or when viewed as a whole, to create a hostile work environment.

Here, Abalola proffers evidence that Guareno made approximately six explicitly racist

comments over a five-year period of time.  Abalola does not allege any incidents that were extraordinarily severe or that involved physically threatening conduct. "For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." *Schwapp*, 118 F.3d at 110 (citations, alteration, and internal quotation marks omitted).  "[W]hether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs, considered cumulatively in order to obtain a realistic view of the work environment." *Id.* at 110–11 (citations and internal quotation marks omitted).  While undoubtedly offensive, Guareno's comments are not sufficiently continuous and concerted in order to be deemed pervasive.  *See Obi v. Westchester Med. Reg'l Physician Servs., P.C.*, No. 19-CV-3022, 2020 WL 1434159, at *8 (S.D.N.Y. Mar. 23, 2020) (holding that three comments made over two years to the plaintiff "that she should keep quiet because of her race; that she could not ask a white, Jewish doctor for assistance; and that as a 'black African,' she should go back to her 'poor country' . . . objectively rise to the level of racial hostility, but are not severe or pervasive enough to sustain a hostile work environment claim"); *Mills-Sanchez v. Rsch. Found. for State Univ. of N.Y.*, No. 1:18-CV-723, 2019 WL 2549726, at *10 (N.D.N.Y. June 20, 2019), *aff'd sub nom. Mills-Sanchez v. State Univ. of N.Y. Rsch. Found.*, 820 F. App'x 63 (2d Cir. 2020) ("[C]onsidering the . . . allegations involving a few race-related remarks that are alleged to have occurred intermittently over the span of six years—the harassment experienced by plaintiff was not severe or pervasive enough to constitute a hostile work environment."); *Sanchez Day v. N.Y.C. Dep't of Consumer Affairs*, No. 10-CV-4888, 2016 WL 1070843, at *5 (S.D.N.Y. Mar. 15, 2016) (holding that the use of a slur two to four times in an eighteen-month period did not amount to a hostile work environment); *Lewis v. City of Norwalk*, 562 F. App'x 25, 28 (2d Cir. 2014) (summary order) (holding that "overtly sexual conduct" that "occurred only sporadically over time, and no more than a few times a year" was insufficient to

establish a hostile work environment); *cf. Rivera*, 743 F.3d at 20–23 (concluding that evidence that two coworkers repeatedly uttered racial slurs at plaintiff and subjected him to "extensive bullying and physical harassment" that "interfered with his ability to do his job" was "(barely) enough evidence" from which a reasonable jury could conclude that the plaintiff experienced a hostile work environment).

In response, Abalola argues that "[b]eing compared to Buckwheat, in conjunction to other comments about Plaintiff's hair, 'angry black woman' attitude, and 'body language' certainly suffices to create a triable question of fact." Opp'n at 14. To support her position, Abalola cites *Greene v. Trs. of Columbia Univ.*, 234 F. Supp. 2d 368 (S.D.N.Y. 2002). *Greene* is distinguishable. In *Greene*, the court concluded that a single incident where a supervisor told the plaintiff that he resembled Buckwheat and "all black people with nappy hair" "evince[d] racial stereotyping and offensive teasing," but standing alone "would not rise to the requisite standards of severity." *Id.* at 379. However, the court concluded that "the repetition of racial slurs for a one-year period, taken together with the other allegations, could meet the pervasiveness standard." *Id.* Here, Abalola does not allege that Guareno repeatedly subjected her to racial slurs, and the episodic comments span a much longer period.

The remainder of Guareno's alleged comments, such as calling Abalola sassy, rude, and slow, or commenting on Abalola's attitude and body language, "were too few, too separate in time, and too mild . . . to create an abusive working environment." *Alfano*, 294 F.3d at 380; *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"). Further, Abalola's evidence of reprimands, criticism, job reassignments, and denials of requests for leave, are insufficient to establish a hostile work environment. *See Littlejohn*, 795 F.3d at 321 (allegations such as additional work, changes in

schedule, removal from meetings, and wrongful reprimands were insufficient to establish a hostile work environment); *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 75 (2d Cir. 2019) ("Legitimate reprimands by an employer are not abuse."); *Langlois v. Hartford Bd. of Educ.*, 831 F. App'x 548, 552 (2d Cir. 2020) (summary order) ("[T]he bulk of the conduct she complains of is reasonably expected in the school working environment:  late-night emails about work-related matters, evaluations and follow-up meetings concerning work performance, criticism related to classroom management and teaching, occasional rude interactions with bosses, and placement on a performance support plan after subpar evaluations."); *Davis–Molinia v. Port Auth. of N.Y. & N.J.*, No. 08-CV-7586, 2011 WL 4000997, at *11 (S.D.N.Y., Aug. 19, 2011) (holding that evidence that a supervisor "excluded [the plaintiff] from staff meetings that concerned her job functions and duties," "refused to greet her in the morning and would walk around the opposite way to his office to avoid her," "talked to her in [a] nasty way," "diminished her responsibilities and gave them to the clerks," "yell[ed] and talk[ed] down to her like she was an idiot when mistakes were made by others," "belittled her by telling her that her position was the same as a particular lower-ranked position," and "made it difficult for her to do her job," was not sufficiently severe or pervasive to constitute a hostile work environment).

In sum, although offensive, mocking, and based on stereotypes, Guareno's conduct was not severe or pervasive enough that a reasonable person would find it hostile or abusive.  Further, Abalola has not offered evidence that Guareno's conduct unreasonably interfered with her work performance.  Accordingly, Abalola's hostile work environment claim under § 1981 is dismissed.

### C.  Section 1981 Retaliation Claims

#### 1.  Legal Standard

Retaliation claims under § 1981 proceed under the three-step *McDonnell Douglas* burden-shifting framework and are analyzed pursuant to the principles applicable to retaliation claims under Title VII.  *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010); *Fincher*, 604 F.3d at 720 ("Retaliation

claims made under 42 U.S.C. § 1981, like those made under Title VII, are evaluated using a three-step burden-shifting analysis."). "First, the plaintiff must establish a *prima facie* case of retaliation." *Fincher*, 604 F.3d at 720. To establish a *prima facie* case of retaliation, Abalola must show that "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (quoting *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006)). If the plaintiff establishes a prima facie case, "then a presumption of retaliation arises and the employer must articulate a legitimate, non-retaliatory reason for the action that the plaintiff alleges was retaliatory. If the employer succeeds at the second stage, then the presumption of retaliation dissipates and the plaintiff must show that retaliation was a substantial reason for the complained-of action." *Fincher*, 604 F.3d at 720. "The trial court's role in evaluating a retaliation claim on summary judgment is to determine whether the proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Whitley v. Montefiore Med. Grp.*, No. 13-CV-4126, 2016 WL 1267788, at *10 (S.D.N.Y. Mar. 30, 2016) (citing *Hicks*, 593 F.3d at 164).

With respect to the third element, adverse employment action, "[a] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. We speak of *material* adversity because we believe it is important to separate significant from trivial harms." *Fincher*, 604 F.3d at 721 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

"'[P]etty slights or minor annoyances that often take place at work and that all employees experience' do not constitute actionable retaliation." *Hicks*, 593 F.3d at 165 (quoting *White*, 548 U.S. at 68). "Thus, '[t]he antiretaliation provision protects an individual not from all retaliation, but from

retaliation that produces an injury or harm.'" *Id.* (quoting *White*, 548 U.S. at 67).  Although the

standard is objective, "[c]ontext matters."  *Id.*

> "The real social impact of workplace behavior often depends on a constellation of
> surrounding circumstances, expectations, and relationships which are not fully
> captured by a simple recitation of the words used or the physical acts performed."
> Therefore, "an act that would be immaterial in some situations is material in others."
> For example, "[a] schedule change in an employee's work schedule may make little
> difference to many workers, but may matter enormously to a young mother with
> school-age children."  And of course context can diminish as well as enlarge material
> effect.

*Id.*  (citations omitted) (quoting *White*, 548 U.S. at 69).  "[I]n determining whether conduct amounts

to an adverse employment action, the alleged acts of retaliation need to be considered both

separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in

gross' as to be actionable."  *Id.* (quoting *Zelnik v. Fashion Inst. Of Tech.*, 464 F.3d 217, 227 (2d Cir.

2006)).

### 2.  Application

Abalola has not established a *prima facie* case of retaliation under § 1981.  Abalola contends

that Guareno retaliated against her for the NYSDHR complaint in three ways:  (1) by continuing to

make comments about Abalola being sassy and slow; (2) by telling Abalola she was not a team player

on her 2018 Performance Appraisal; and (3) by not assigning Abalola post-operation open heart

surgery patients.  These alleged acts, considered both separately and in the aggregate, do not amount

to actionable retaliation.

First, comments calling Abalola sassy and slow are merely petty slights and minor

annoyances, which do not constitute adverse employment actions.  *See, e.g.*, *Felmine v. Star*, No. 13-

CV-2641, 2016 WL 4005763, at *3 (E.D.N.Y. July 25, 2016) (holding that "various insults" directed

at the plaintiff were merely petty slights or minor annoyances); *Martinez v. N.Y.C. Dep't of Educ.*, No.

04-CV-2728, 2008 WL 2220638, at *12 (S.D.N.Y. May 27, 2008) ("[I]ncidents where [a supervisor]

publicly yelled at Plaintiff for various reasons or called him 'shit' . . . constitute, as a matter of law,

the sorts of petty slights and personality conflicts that are not actionable.").

Similarly, Abalola's 2018 Performance Appraisal, in which she received the overall rating of "strong contributor," does not constitute an adverse employment action. *See Wilson v. N.Y. & Presbyterian Hosp.*, No. 17-CV-5012, 2021 WL 2987134, at *6 (E.D.N.Y. July 15, 2021) ("Though a negative performance evaluation can constitute an adverse employment action in the retaliation context, a performance evaluation that provides an overall rating of 'meets expectations' is ordinarily not an adverse employment action."); *cf. Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011) ("[C]riticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action."). Abalola has not offered any explanation why the comment on her otherwise positive evaluation would dissuade a reasonable employee from making or supporting a charge of discrimination.

Finally, Abalola fails to provide sufficient evidence to create a genuine issue of fact as to whether being denied post-operation open heart surgery patients would be materially adverse to a reasonable employee. The "reassignment of job duties," although "not automatically actionable," may constitute a materially adverse employment action. *White*, 548 U.S. at 70–71. "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 209 (2d Cir. 2006) (quoting *White*, 548 U.S. at 71). "Less prestigious assignments could be 'materially adverse to a reasonable employee,' because a reasonable employee could be dissuaded from making a charge of discrimination if doing so would result in being relegated to work normally performed by more junior employees." *Wilkinson v. New York State*, No. 2:18-CV-4148, 2019 WL 5423573, at *13 (E.D.N.Y. Oct. 22, 2019) (citation omitted) (quoting *Kessler*, 461 F.3d at 209).

Here, Abalola's brief is devoid of any information regarding her assignments—she merely

states that she was given "less challenging" and "less desirable" assignments. *See* Opp'n at 15–16. Abalola does not explain what patients she was assigned in lieu of the post-operation open heart surgery patients, or why those patients are less challenging or desirable. Beside Abalola's personal opinion, there is no evidence that the post-operation open heart surgery patients were objectively more prestigious or desirable. *See Dillon v. Morano*, 497 F.3d 247, 254–55 (2d Cir. 2007) ("[A]lthough . . . transfer from an 'elite' unit to a 'less prestigious' unit could constitute adverse employment action, [the plaintiff] has presented no evidence aside from his own personal opinion that [another unit] is the 'least desirable . . . .'" (citation omitted)); *Dziedzic v. State Univ. of N.Y. at Oswego*, 648 F. App'x 125, 128 (2d Cir. 2016) ("[T]he record lacks any evidence, aside from [the plaintiff's] opinion, that the [reassigned] department was less prestigious."). Given the lack of evidence, a reasonable jury could not conclude that Guareno's decision to not assign Abalola post-operation open heart surgery patients was an adverse employment action.

Further, even assuming *arguendo* that Abalola could establish a *prima facie* case based on being denied post-operation open heart surgery patients, Defendants have articulated a legitimate, non-retaliatory reason why Guareno stopped assigning those patients to Abalola. Abalola admits that "[w]hen 10 East began to have a large volume of post-op open heart surgery patients, Guareno decided that additional education was needed for the nurses," that "[a]ll the nurses would be trained and then would care for these patients," and that "[o]nly a few nurses were trained because of COVID-19 and Abalola was not among them." Pl.'s 56.1 Stmt. ¶¶ 108–10. Abalola has not offered any explanation or evidence to show that a substantial reason for Guareno's decision to require all of the nurses on 10 East to have additional training was to retaliate against Abalola. Thus, Abalola has not offered sufficient evidence for a rational finder of fact to infer that Guareno was acting with retaliatory motive.

Because there is insufficient evidence to establish an adverse employment action,

Defendants are granted summary judgment on Abalola's § 1981 retaliation claims.

### D. Supplemental Jurisdiction

The Court declines to exercise supplemental jurisdiction over Abalola's remaining state law claims under the NYSHRL and the NYCHRL. The Court has discretion to hear such claims pursuant to 28 U.S.C. § 1367(a), which states that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, under 28 U.S.C. § 1367(c)(3), the exercise of supplemental jurisdiction over a party's remaining state law claims is within the Court's discretion if it has "dismissed all claims over which it has original jurisdiction." The Second Circuit counsels against exercising supplemental jurisdiction in this circumstance: "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) (quoting *Castellano v. Bd. of Trs.*, 937 F.2d 752, 758 (2d Cir. 1991)). "[D]istrict courts frequently decline to exercise supplemental jurisdiction over state employment discrimination causes of action when the federal claims have been resolved." *Charley v. Total Off. Plan. Servs., Inc.*, 202 F. Supp. 3d 424, 432 (S.D.N.Y. 2016).

Because the Court has dismissed all of Abalola's federal claims and there is no other basis for federal jurisdiction over this case, the Court declines to exercise its supplemental jurisdiction over Abalola's NYSHRL and NYCHRL claims. *See* 28 U.S.C. § 1367(c)(3).

## IV.   CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED as to Abalola's § 1981 claims. Abalola's remaining state law claims are dismissed without prejudice to refiling in state court.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 24, to enter

judgment in favor of Defendants, and to close this case.

SO ORDERED.

Dated:  March 30, 2022
New York, New York

_____
GREGORY N. WOODS
United States District Judge